**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5095-16T3

IN THE MATTER OF COUNTY
CORRECTION CAPTAIN
(PC1189P) AND COUNTY
CORRECTION LIEUTENANT
(PC1202P), HUDSON COUNTY.

_____

Submitted January 28, 2019 – Decided February 21, 2019

Before Judges Messano and Fasciale.

On appeal from the New Jersey Civil Service Commission, Docket No. 2017-2783.

Maria Gaines, Luis Oyola, and Robert Kalb Jr., appellants pro se.

Scarinci & Hollenbeck, LLC, attorneys for respondent County of Hudson (Sean D. Dias, on the statement in lieu of brief).

Gurbir S. Grewal, Attorney General, attorney for respondent Civil Service Commission (Melissa Dutton Schaffer, Assistant Attorney General, of counsel; Debra A. Allen, Deputy Attorney General, on the brief).

PER CURIAM

Maria Gaines, Luis Oyola, and Robert Kalb (collectively appellants), who are now retired, appeal from a June 12, 2017 final decision entered on remand by the Civil Service Commission (the Commission). They argue primarily that the Commission's decision is arbitrary because it failed to retroactively appoint them to higher titles and award them corresponding back pay. We disagree, conclude there exists sufficient credible evidence in the record to support the decision, and affirm.

The County of Hudson (County) previously employed appellants. Oyola, who retired as a Lieutenant, wanted a promotion to County Correction Captain (Captain). Gaines and Kalb, who retired as Sergeants, wanted promotions to County Correction Lieutenant (Lieutenant). Appellants never received the promotions.

Before the remand, appellants challenged the eligibility requirements of individuals who sat for the Captain and Lieutenant promotional examinations. The County had rejected that challenge, and promoted three of eight individuals on the list to Captain, and seven of twenty-four individuals on the list to Lieutenant. The Commission upheld the promotions. Appellants appealed from the Commission's upholding of the promotions arguing that the Commission allowed individuals to sit for the examination, in violation of N.J.A.C. 4A:4-

2.6(a)(1) (indicating that applicants for promotional examinations must have "one year of continuous permanent service").

In part, we reversed for failure to comply with the principles underlying the proper administration of working test periods. In the Matter of County Correction Captain (PC1189P) and County Correction Lieutenant (PC1202P), Hudson County, No. A-2162-14 (App. Div. Mar. 9, 2017) (slip op. at 9-10). N.J.A.C. 4A:1-1.3 defines a working test period as "a part of the examination process after regular appointment, during which time the work performance and conduct of the employee is evaluated to determine if permanent status is merited." The legislature has defined the purpose of the working test period to give an appointing authority an opportunity "to determine whether an employee satisfactorily performs the duties of a title." N.J.S.A. 11A:4-15. In our prior opinion, we stated that there was

> no evidence [that] indicated the County observed and evaluated the Applicants [who took the exams] during a working test period, prepared progress reports, or determined they satisfactorily performed the duties of their respective titles and successfully completed a working test period. Absent evidence that Applicants actually and successfully completed a working test period, the Commission could not presume they had done so.

[In the Matter of County Correction Captain (PC1189P) and County Correction Lieutenant (PC1202P), Hudson County, slip op. at 10.]

In the prior appeal, we granted appellants' request for removal of various applicants from the promotional lists. In so doing, we did not mandate that the County appoint or promote appellants. Instead, we stated that – due to the passage of time – "further measures may be necessary which should be addressed in the first instance [by] the Commission." Id. at 18.

On remand, the Commission followed our instructions and removed the names of various applicants from the lists of individuals who were eligible to take the exams. And it reinstated the original titles for those who received promotions. Under N.J.A.C. 4A:4-2.6(a)(2), the Commission then amended the announcements for the promotions and extended the deadline for filing applications, to allow proper testing for eligible candidates.

Appellants contend that their ranked positions on the eligible lists would have guaranteed their promotions on remand. They say that once the Commission removed the improperly promoted applicants from the eligible lists, Oyola would have moved up on the Captains List from the fifth spot to the second spot. And they assert that, on the Lieutenants list, Kalb would have moved up from the seventh spot to the second spot, and Gaines would have

4

moved from the tenth spot to the fifth spot.  But, crucially, appellants had retired after the other applicants were already promoted.

Thus, the Commission noted, as to appellants, that they were required to "successfully complete a working test period" before they could be promoted to a higher title.  Like us, the Commission was unwilling to assume that appellants would previously have successfully completed their respective working test periods.  That is so because the County did not "observe or evaluate [the appellants] as evidenced by [any] progress reports."  The Commission therefore was unwilling to retroactively promote them.

On appeal, appellants raise the following arguments:

> POINT I
> THE COMMIS[S]ION['S] DECISION WAS ARBITRARY, CAPRICIOUS AND UNREASONABLE.  ALL IMPACTED CANDIDATES WERE NOT A PART OF THE PROCEEDINGS[.]
>
> POINT II
> THE CURRENT CANDIDATES ON THE ELIGIBILITY LIST[S] WERE NOT REPRESENTED IN THIS MATTER[.]
>
> POINT III
> THE CIVIL SERVICE DECISION IS NARROWLY TAILORED TO ADVANCE THE APPOINTING AUTHORITIES AGENDA AND BARS THE APPELLANTS FROM RECOVERY[.]

POINT IV

APPEL[L]ANTS['] PROMOTIONS WERE NOT A POSSIBILITY BUT A CERTAINTY AS HUDSON COUNTY PROMOTES IN ORDER FROM THE LIST[S] – BUT FOR THE ACTIONS OF HUDSON COUNTY AND CIVIL SERVICE APPELLANTS WOULD HAVE BEEN PROMOTED[.]

POINT V

HUDSON COUNTY'S OFFER TO MAKE APPELLANTS WHOLE SHOULD HAVE BEEN INCORPORATED INTO THE CIVIL SERVICE DECISION[.]

POINT VI

THE APPELLATE DIVISION DECISION RESULTED IN NO MORE THAN AN INCONVENIENCE TO THE INELIG[IB]LE CANDIDATES BUT CAUSED [IRREPARABLE] HARM TO THE APPELLANTS[.]

POINT VII

HUDSON COUNTY'S PROMOTIONAL PRACTICES ARE INDICATIVE OF ITS WILLINGNESS TO BEND, BREAK, STRETCH AND CHALLENGE THE RULES WHEN IT SUITS [ITS] NEEDS[.]

POINT VIII

[APPELLANTS] ARE LEGALLY ENTITLED TO THE PROMOTIONS UNDER IN RE SNELLBAKER . . . AND HUDSON COUNTY HAD A LEGAL OBLIGATION TO PROMOTE[.]

Our review of a Commission's determination is limited. In re Stallworth, 208 N.J. 182, 194 (2011); see also Wnuck v. N.J. Div. of Motor Vehicles, 337 N.J. Super. 52, 56 (App. Div. 2001) (indicating that "[i]t is settled that [a]n

6

administrative agency's interpretation of statutes and regulations within its implementing and enforcing responsibility is ordinarily entitled to . . . deference") (second alteration in original) (citations and internal quotation marks omitted). We afford a "strong presumption of reasonableness to an administrative agency's exercise of its statutorily delegated responsibilities." Lavezzi v. State, 219 N.J. 163, 171 (2014). We "defer to an agency's interpretation of . . . [a] regulation, within the sphere of [its] authority, unless the interpretation is plainly unreasonable," but are "in no way bound by the agency's interpretation of a statute or its determination of a strictly legal issue." US Bank, N.A. v. Hough, 210 N.J. 187, 200 (2012) (citations and internal quotation marks omitted). This is because "a state agency brings experience and specialized knowledge to its task of administering and regulating a legislative enactment within its field of expertise." Ibid.

To reverse the decision, we must find an agency's decision to be "arbitrary, capricious, or unreasonable, or [] not supported by substantial credible evidence in the record as a whole." Stallworth, 208 N.J. at 194 (alteration in original) (quoting Henry v. Rahway State Prison, 81 N.J. 571, 579-80 (1980)). In making such a determination, we must examine:

> (1) whether the agency's action violates express or implied legislative policies, that is, did the agency

follow the law; (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.

[Ibid.]

Appellants are not entitled to retroactive appointment and back pay. N.J.A.C. 4A:4-1.10(c) governs the approval of appointments by the Commission and grants the Commission delineated authority to "order a retroactive appointment date due to administrative error, administrative delay, or other good cause[.]" This is a very limited remedy that is only permitted for administrative purposes or for "good cause." The Commission has consistently enforced the administrative code's requirements, except in extraordinarily rare circumstances. "Although the Commission's interpretation is not necessarily controlling, . . . [w]here the Commission's interpretations [of the administrative code] have continued over a period of years without legislative interference they have been given great weight as evidence of the Legislature's intent" behind the law and regulations. Makowitz v. State, Dep't of Civil Serv., 177 N.J. Super. 61, 65 (App. Div. 1980) (citations omitted). Here, there were no administrative errors or delays, and appellants have failed to show good cause. There is no evidence establishing that appellants completed working test periods, as

required by the Commission's regulations.  Thus, under the circumstances presented in this appeal, it would be extraordinarily rare for the Commission to depart from its own regulations, which have implemented the statutory framework.

In our prior opinion, we addressed the importance of the working test period by stating:

> A working test period "furthers the [Civil Service] Act's purpose 'to fill government positions upon a basis of merit and fitness to serve' by creating a probationary period of service during which time the appointing authority can observe and evaluate the appointee." Commc'ns Workers, AFL–CIO v. N.J. Dep't of Pers., 154 N.J. 121, 130 (1998) (citation omitted).  "[T]he actual completion of a working test period is ordinarily a basic condition of permanent employment." Cipriano v. Dep't of Civil Serv., 151 N.J. Super. 86, 90 (App. Div. 1977).  "Neither the appointing authority nor the Civil Service Commission ha[s] any authority to ratify the improper performance of the working test period." Id. at 91 (finding inadequate a "sham paper transfer to make it appear that Cipriano had actually complied with the working test period").
>
> [In the Matter of County Correction Captain (PC1189P) and County Correction Lieutenant (PC1202P), Hudson County, slip op. at 10 (alterations in original).]

There is no evidence that appellants served successful working test periods.  And even assuming appellants were entitled to placement of their names on the

promotion lists on remand, they have retired from their respective positions at the County. Thus, they are unable to serve the working test period for the appointment to Captain or Lieutenant. The Commission may not presume appellants would have successfully completed working test periods for their respective titles; and there is no credible evidence in this record that the County observed or evaluated appellants, such as progress reports or other documentation demonstrating appellants' performance of job duties. The Commission cannot disregard the working test period requirements.

Moreover, the Commission's regulations do not guarantee appellants promotional appointments. N.J.A.C. 4A:5-2.2(d) states that, "[w]hen a single vacancy is to be filled from a promotional certification headed by a nonveteran, any reachable eligible may be appointed in accordance with the 'rule of three.' See N.J.S.A. 11A:4-8." N.J.S.A. 11A:4-8, which sets forth the "rule of three," states:

> The [C]ommission shall certify the three eligibles who have received the highest ranking on an open competitive or promotional list against the first provisional or vacancy. For each additional provisional or vacancy against whom a certification is issued at that time, the commission shall certify the next ranked eligible. If more than one eligible has the same score, the tie shall not be broken and they shall have the same rank. If three or more eligibles can be certified as the

result of the ranking without resorting to all three highest scores, only those eligibles shall be so certified.

As we have stated,

> a person who successfully passes an examination and is placed on an eligible list does not thereby gain a vested right to appointment. The only benefit inuring to such a person is that so long as that list remains in force, no appointment can be made except from that list.
>
> [In re Crowley, 193 N.J. Super. 197, 210 (App. Div. 1984).]

Thus, appellants do not have a vested right of an appointment from the eligible lists for these promotions. In Nunan v. New Jersey Department of Personnel, 244 N.J. Super. 494, 495-96 (App. Div. 1990), the appellant claimed that he was entitled to immediate appointment to the position of Atlantic City police officer with back pay because he should have been entitled to a resident's preference for appointment. The appellant claimed that his name was "improperly removed from the eligible list," and therefore he was "entitled to a mandated appointment and back pay." Id. at 497. Before he was removed from the list, the appellant ranked sixteenth, and because appointments were later made from that list, we stated that "one can reasonably assume that at some point [the] appellant would have been one of the three highest scoring individuals." Ibid. But we concluded that, "[v]iewing the facts and law most favorably to

appellant, the best that can be said is that he had a right to be considered for appointment. He did not, and does not, have a legitimate claim of entitlement to the position . . . ." Id. at 497-98. As to appellants, they could have been entitled to restoration on the eligible lists, but their retirement made that impossible.

Appellants argue that the County was "amenable to retroactively promoting those eligible individuals, who were on the promotional list for lieutenants and captains, and retroactively paying them their lost pay for the period commencing on November 28, 2015 . . . ."[1] Even if that were the case, the Commission's regulations mandate satisfactory completion of the working test period for permanent appointment to a title. N.J.S.A. 11A:4-15; N.J.A.C. 4A:1-1.3. Thus, even if the County was willing to retroactively promote appellants and give them back pay, the law prevented the Commission from doing so.

We conclude that appellants' remaining arguments are without sufficient merit to warrant further discussion in this opinion. R. 2:11-3(e)(1)(E). Nevertheless, we add these brief remarks.

---

[1] The County did not participate in the prior appeal. On this appeal, the County concedes that the examination process for promotions rests exclusively with the Commission.

A-5095-16T3

Appellants cite to County employees who have received promotions while holding the official Civil Service title of "confidential aid." Because of this, they claim that their titles could be "switch[ed] . . . to the unclassified title of 'confidential aid'" or that the County could "acknowledg[e] that [a]ppellants were legally entitled to the promotions by contract." Appellants were not legally entitled to promotions and the existence of other County employees who held positions that did not mandate working test periods or year in grade requirements is not dispositive.

Finally, there is no basis whatsoever for appellants' contention that the Commission's decision is "narrowly tailored to protect the disqualified candidates and to bar . . . [a]ppellants from recovery." Appellants list seven points as to how the decision was contrary to our 2017 ruling. These contentions are not supported by the law, and do not mean that the decision was not narrowly tailored.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5095-16T3